UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

ANTHONY E. MYERS,

                                        Plaintiff,

                    -v-

THE CITY OF NEW YORK, WARDEN EVELYN
MARIBAL, and MICHAEL BLOOMBERG,

                                        Defendants.

------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/29/12
```

11 Civ. 8525 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Anthony E. Myers, proceeding *pro se*, brings various claims, pursuant to 42

U.S.C. § 1983, stemming from his detention at a New York City Department of Correction

("DOC") correctional facility.  Defendants The City of New York (the "City"), Warden Evelyn

Maribal, and Mayor Michael Bloomberg move to dismiss Myers's Complaint.  For the reasons

discussed below, defendants' motion is granted.  Myers's Complaint is dismissed without

prejudice to re-filing upon exhaustion of his administrative remedies.

I.      **Background**

        A.      **Facts**[1]

        Myers is currently a pretrial detainee at the Otis Bantum Correctional Center ("OBCC"),

a DOC facility.  Myers's bail is set at $200,000; because he has been unable to make bail, he

remains in custody.  When Myers arrived at OBCC on August 1, 2011, he was held in "an over-

---

[1] The Court's account of the underlying facts in this case is drawn from the Complaint
("Compl.") (Dkt. 2).  On a motion to dismiss, the Court takes all facts pleaded in the Complaint
as true.

[1]

crowded, non-air[-]conditioned holding pen for over 16" hours.  The holding cell had a "urine and filth laden floor" on which Myers had to sit, along with 40 other men.  Instead of being given a cup from which to drink, while in the holding cell, Myers was given a "plastic glove," and instructed to poke holes in the fingers and drink water from the glove.  The officers guarding the cell used derogatory language while talking to and about the inmates, including, "nigger, faggot, and any other derogatory profanity you could imagine."  Before being moved from the holding cell into his own cell, Myers was strip searched, and was subsequently strip searched on four other occasions.

Myers is currently being held in what he describes as an overcrowded "dorm environment" with 60 inmates.  The inmates share five toilets and five sinks, which Myers alleges is inadequate.  In addition to the alleged overcrowding itself, Myers also complains of problems stemming from it:  Visitors face long wait times, and sometimes leave; supplies such as "clothes, shoes, soap, razors and other items" are depleted or unavailable; and laundry services are non-existent, such that the sheets on which he sleeps are "rust-laden."  On at least one occasion, the tier in which Myers is housed was denied access to the law library "as a result of 2 consecutive searches."[2]

Myers filed grievances at OBCC about issues relating to overcrowding, laundry, excessive bail, strip searches, and access to the law library.  He did not appeal or otherwise follow up on these grievances, explaining that he "was told that filing a grievance was futile and a waste of time" by prison officials, and because "[i]t is obvious that the issues in this complaint are much larger than the grievance protocol."

---

[2] Although Myers does not allege exclusion from the law library in the text of his Complaint, he does attach a grievance including these allegations, dated November 9, 2011, which is incorporated into the Complaint.

Myers alleges that the overcrowding is a direct result of "aggressive policing in minority neighborhoods," "ag[g]ressive Stop and Frisk programs," and corruption, including the planting of drugs on arrestees, on the part of the City and the New York City Police Department, at the direction of Mayor Bloomberg and Police Commissioner Raymond Kelly. In support of his arguments, Myers attaches multiple newspaper articles to his Complaint.

### B.    Procedural History

On November 18, 2011, Myers filed his Complaint in this action (Dkt. 2). He alleges (1) excessive bail; (2) violation of consent decrees; (3) overcrowding, and various allegedly unconstitutional and inhumane prison conditions stemming from overcrowding, including a period spent in an unsanitary holding cell, depleted hygienic supplies, lack of access to laundry, and long wait times for visitors; (4) violation of the City's minimum standards for confinement conditions; (5) verbal abuse; (6) unconstitutional strip searches; and (7) denial of access to the law library. He seeks $5 million in damages, as well as injunctive relief.

On February 6, 2012, defendants filed a motion to dismiss (Dkt. 12).[3]  On March 16, 2012, Myers filed his opposition to the motion (Dkt. 22); defendants replied on March 29, 2012 (Dkt. 23).

### II.    Legal Standard on a Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Despite the well-established rule in this circuit that *pro se*

---

[3] At the time defendants filed their motion, counsel for defendants did not know whether service had been executed on defendant Mayor Bloomberg, and so the motion was filed on behalf of the City and Maribal only. Upon learning that Mayor Bloomberg had been served, defendants sought to include him among the defendants moving to dismiss, a request which this Court granted (Dkt. 27).

submissions are to be liberally construed and interpreted to raise "the strongest arguments they

suggest," *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006), the

plausibility standard applies equally to *pro se* complaints. *See Hill v. Curcione*, 657 F.3d 116,

122 (2d Cir. 2011).

To state a claim for relief that is facially plausible, an allegation must be "more than an

unadorned, the-defendant-unlawfully-harmed me accusation"; a claim will only have "facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). Accordingly, where a plaintiff has not "nudged [his or her] claims across the

line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at

570.

In making that determination, the Court must accept as true all well-pleaded factual

allegations in the complaint, and "draw[ ] all inferences in the plaintiff's favor." *Allaire Corp. v.

Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (internal quotation marks and citation omitted).

On the other hand, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see

also Twombly*, 550 U.S. at 555 (a court is "'not bound to accept as true a legal conclusion

couched as a factual allegation'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III.     Discussion

### A.     Excessive Bail

Myers argues that his bail, currently set at $200,000, is excessive, in violation of the

Eighth Amendment, which states that "excessive bail shall not be required." U.S. CONST.

[4]

AMEND. VIII.  To the extent Myers purports to bring a habeas petition challenging his

confinement, under either 28 U.S.C. § 2241 or 28 U.S.C. § 2254,[4] his petition is denied.  Under

both §§ 2241 and 2254, "a petitioner seeking relief from state court detention is required to

exhaust state remedies before his federal habeas corpus petition will be considered."  *King*, 2011

WL 3471548, at *1 (citing 28 U.S.C. § 2254(b)(1)(A); *U.S. ex rel. Scranton v. N.Y.*, 532 F.2d

292, 294 (2d Cir. 1976)).  "'State remedies are deemed exhausted when a petitioner has: (i)

presented the federal constitutional claim asserted in the petition to the highest state court (after

preserving it as required by state law in lower courts) and (ii) informed that court (and lower

courts) about both the factual and legal bases for the federal claim.'"  *Smith v. McGinnis*, No. 01-

cv-1363, 2008 WL 5203726, at *4 (S.D.N.Y. Dec. 11, 2008) (quoting *Ramirez v. Attorney Gen.

of State of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001)).  Myers has not challenged his bail through the

New York State courts before bringing his claim here.  Accordingly, his claim for excessive bail

is dismissed, without prejudice to re-filing if and when Myers can demonstrate that he has

exhausted state remedies.

### B.    Section 1983 Claims Against Defendant Maribal

As to the remainder of Myers's claims, his submissions reflect an intent to bring claims

pursuant to 42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights; it provides only

a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13

F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)).  "To

state a claim under Section 1983, a plaintiff must allege facts indicating that some official action

has caused the plaintiff to be deprived of his or her constitutional rights."  *Zherka v. Amicone*,

---

[4] It is an open question in this Circuit whether a petition seeking habeas corpus relief from
pretrial state detention is more properly brought under § 2241 or § 2254.  *See King v. Demarco*,
No. 11-cv-2000, 2011 WL 3471548, at *1 (E.D.N.Y. Aug. 3, 2011) (collecting authorities).

634 F.3d 642, 644 (2d Cir. 2011) (citing *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (per curiam)); *see also Ross v. Westchester Cnty. Jail*, No. 10-cv-3937, 2012 WL 86467, at *9 (S.D.N.Y. Jan. 11, 2012). "A defendant's conduct must therefore be a proximate cause of the claimed violation in order to find that the individual defendant deprived the plaintiff of his rights." *Ross*, 2012 WL 86467, at *9 (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)). Additionally, where, as here, a plaintiff is seeking money damages against the defendants, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite" to recovery under § 1983. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).

Myers does not allege anywhere in the Complaint that defendant Maribal, the warden at OBCC, was personally involved in any of the incidents which give rise to this suit. Other than in the caption and in section I.B (in which plaintiff is instructed to list the defendants to his action), her name appears nowhere in the Complaint. *See Barnes v. Pozzi*, No. 10-cv-2554, 2012 WL 3155073, at *8 (S.D.N.Y. Aug. 3, 2012) (dismissing, for lack of personal involvement, two § 1983 defendants who were not mentioned anywhere in the allegations of the complaint). In his affirmation opposing the motion to dismiss (Dkt. 22), Myers argues that, because Maribal is the warden, and therefore "responsible for overall policy adherence/compliance" in OBCC, "disregard of minimum standards and detainees['] constitutional rights would have been [her] direct responsibility." However, a "prison official cannot be personally liable under § 1983 on the basis of respondeat superior or simply because he is atop the prison hierarchy." *Lozada v. Warden Downstate Corr. Facility*, No. 10-cv-8425, 2012 WL 2402069, at *3 (S.D.N.Y. June 26, 2012) (citing *Colon v. Coughlin*, 58 F.3d 865, 873–74 (2d Cir. 1995)). Accordingly, Myers's § 1983 claims against Maribal are dismissed, with prejudice, in their entirety.

## C.     Failure to Exhaust Administrative Remedies[5]

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all available administrative remedies before bringing a § 1983 action. *See* 42 U.S.C. § 1997e(a). "This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim." *Simmons v. Bezio*, No. 11-cv-753, 2012 WL 3054127, at *2 (N.D.N.Y. June 21, 2012) (citing *Giano v. Goord*, 380 F.3d 670, 675–76 (2d Cir. 2004)) (additional citations omitted). Inmates must exhaust their administrative remedies even if they are seeking only money damages not available in prison administrative proceedings. *Giano*, 380 F.3d at 675. Under the PLRA, "'[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Dennis v. Westchester Cnty. Jail Corr. Dep't*, No. 11-cv-1452, 2012 WL 2125837, at *1 (2d Cir. June 13, 2012) (summ. order) (quoting 42 U.S.C. § 1997e(a)). This language from the PLRA is, in fact, recited verbatim in the seven-page form on which Myers filed his Complaint. "If nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted." *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003).

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004), *overruled on other grounds by Woodford v. Ngo*, 548 U.S. 81 (2006). It must be raised by a defendant, and it is the defendant's burden to

---

[5] Because the Court dismisses Myers's Complaint for failure to exhaust, the Court does not reach defendants' argument that Myers committed perjury on his application to proceed *in forma pauperis*. However, if Myers can, in the future, demonstrate exhaustion, and does re-file those claims in his Complaint which are not herein dismissed with prejudice, he is admonished that failure to report *any* income, including monetary gifts, on his *in forma pauperis* application will result in the dismissal of all claims with prejudice.

prove that the plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted). The Second Circuit has identified a number of circumstances under which administrative exhaustion is not mandatory, *i.e.*, when

> (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as reasonable misunderstanding of the grievance procedure, justify the prisoner's failure to comply with the exhaustion requirement.

*Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).

The correctional facility's requirements, and not the PLRA, "define the boundaries of proper exhaustion." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009). Because OBCC, where Myers is confined, is a DOC facility, his administrative remedies are covered by the DOC's five-step Inmate Grievance Resolution Program (the "IGRP").[6] *See* DOC Directive 3375R–A. The IGRP requires an inmate to: (1) file an informal complaint with the Inmate Grievance Resolution Committee ("IGRC"); (2) in the event that informal resolution is not reached within five days, request a formal hearing before the IGRC; (3) appeal any unfavorable decision by the IGRC to the Commanding Officer; (4) appeal any unfavorable decision by the Commanding Officer to the Central Office Review Committee; and (5) appeal any unfavorable decision from the Central Office Review Committee to the New York City Board of Correction. *See Martin*, 2012 WL 1392648, at *5; *Mamon*, 2012 WL 260287, at *3; *see also, e.g., Reuben v. N.Y. City Dep't of Corr.*, No. 11-cv-378, 2011 WL 5022928, at *2 (S.D.N.Y. Oct. 18, 2011); *Chisholm v. N.Y. City*

---

[6] The Court takes judicial notice of the IGRP, as courts in this Circuit regularly do. *See Martin v. City of N.Y.*, No. 11-cv-600, 2012 WL 1392648, at *5 n.2 (S.D.N.Y. Apr. 20, 2012); *see also Mamon v. N.Y. City Dep't of Corr.*, Nos. 10-cv-8055 et al., 2012 WL 260287, at *3 n.4 (S.D.N.Y. Jan. 27, 2012); *Swanston v. Dep't of Corr.*, No. 11-cv-1219, 2011 WL 5105489, at *2 (S.D.N.Y. Oct. 27, 2011). The DOC's website also contains a link describing the IGRP. *See* City of New York Dep't of Corr., Inmate Grievance Resolution Program Directive, http://www.nyc.gov/html/doc/downloads/pdf/3375R-A.pdf.

*Dep't of Corr.*, No. 08-cv-8795, 2009 WL 2033085, at *1 (S.D.N.Y. July 13, 2009). "An

inmate's administrative remedies are not exhausted until he proceeds through all five levels of

the IGRP." *Houston v. Horn*, No. 09-cv-801, 2010 WL 1948612, at *6 (S.D.N.Y. May 13,

2010); *see also Martin*, 2012 WL 1392648, at *5; *Williams v. Dep't of Corr.*, No. 11-cv-1515,

2011 WL 3962596, at *10 (S.D.N.Y. Sept. 7, 2011) (internal quotations omitted).

Myers claims that he took the initial step of filing an informal complaint with the IGRC

regarding access to the law library, strip searches, excessive bail, overcrowding, and laundry. As

to his other claims, he does not even allege to have initiated the grievance procedure. As to no

claims does Myers allege to have exhausted his administrative remedies. In fact, he admits the

opposite: In his Complaint, Myers argues that the IGRP is an inappropriate venue for his claims,

because "[i]t is obvious that the issues in this complaint are much larger than the grievance

protocol." However, Myers's belief that his claims are too important to be handled by the IGRP

does not excuse his failure to exhaust the administrative remedies that he acknowledges were

available.

Myers also states that he "was told that filing a grievance was futile and a waste of time

by general officers and officers of rank." "It is well established that the PLRA's exhaustion

requirement cannot be waived based upon the plaintiff's belief that pursuing administrative

remedies would be ineffective or futile." *Berry v. City of N.Y.*, No. 00-cv-2834, 2002 WL

31045943, at *7 (S.D.N.Y. June 11, 2002) (collecting cases). It is true that a "defendant can be

estopped from asserting an affirmative defense of failure to exhaust where . . . the defendant

takes some action to inhibit an inmate from exhausting his administrative remedies[.]" *Williams*,

2011 WL 3962596, at *5; *see also Veloz v. N.Y.*, 339 F. Supp. 2d 505, 515 (S.D.N.Y. 2004)

(collecting cases). But vague allegations that unnamed "officers" told Myers that filing a

[9]

grievance was a waste of his time are insufficient to excuse him from having to file a grievance. *See Dixon v. Laboriel*, No. 01-cv-3632, 2010 WL 2365860, at *4 (S.D.N.Y. June 10, 2010) ("the alleged ineffectiveness of the administrative remedies that are available does not absolve a prisoner of his obligation to exhaust such remedies"); *Johnson v. Killian*, No. 07-cv-6641, 2009 WL 1066248, at *5 (S.D.N.Y. Apr. 21, 2009) ("a prediction of denial, even if wholly reasonable, does not warrant depriving the prison administration of the opportunity to address the claim in the first instance, a paramount goal of the PLRA"); *see also Woodford v. Ngo*, 548 U.S. 81, 89–90 (2006) (statutes requiring exhaustion serve an important purpose in situations where "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons").

Because Myers does not plausibly allege that his failure to exhaust falls within any of the three exceptions recognized in this Circuit, his claims against defendants the City and Mayor Bloomberg are dismissed.

The Court now considers whether these dismissed claims are properly dismissed with or without prejudice to re-filing if Myers does, in the future, exhaust his administrative remedies.

### D.    Consent Decrees

Myers first alleges that the conditions of his confinement violate consent decrees put into place by the Hon. Morris E. Lasker. The Court surmises that these are references to consent decrees regarding Rikers Island facilities entered by Judge Lasker, and later administered by the Hon. Harold Baer, Jr., in *Benjamin v. Horn*, No. 75-cv-3073, and related cases. In *Benjamin v. Fraser*, 161 F. Supp. 2d 151 (S.D.N.Y. 2001), Judge Baer terminated those provisions of the consent decrees relevant to Myers's allegations. *Id.*, *aff'd in relevant part and rev'd in part*, 343 F.3d 35 (2d Cir. 2003) (continuing only those portions of the consent decrees pertaining to ventilation, bed-spacing, lighting, and food service areas); *see also Patterson v. City of N.Y.*, No.

11-cv-7976, 2012 WL 3264354, at *5 (S.D.N.Y. Aug. 9, 2012) (discussing termination of Lasker consent decrees). Myers's claims that the conditions at OBCC violate consent decrees in this district are, therefore, dismissed with prejudice.

### E.     Fourteenth Amendment

Myers, as a pretrial detainee in a municipal jail, makes claims relating to the conditions of his confinement at OBCC which are deemed to arise under the Due Process Clause of the Fourteenth Amendment. *Patterson*, 2012 WL 3264354, at *5. "Due process requires that a pretrial detainee not be punished." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). Therefore, in assessing whether a pretrial detainee's challenges to the conditions of his confinement violate due process, "the proper inquiry is whether those conditions amount to punishment." *Id.* at 535. Courts make this determination by examining "whether the restrictions or conditions 'are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose.'" *Patterson*, 2012 WL 3264354, at *5 (quoting *Bell*, 441 U.S. at 561). In doing so, courts must be mindful that "'prison administrators [are to be] accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Patterson*, 2012 WL 3264354, at *5 (quoting *Bell*, 441 U.S. at 547).

#### 1.     Overcrowding

Myers alleges that the holding cell where he was placed upon entry to OBCC and the dormitory in which he is currently housed are overcrowded. He claims that the conditions in which he is housed violate the City's minimum standards, in that: (1) there are 60 detainees housed in an area designed to hold 50; (2) there are 5 sinks, but there should be 6; and (3) there are 5 toilets, but there should be 7. *See* 40 R.C.N.Y. §1-04(c)(5)(i) ("A multiple occupancy area

[11]

shall house no more than . . . 50 detainees."; *id.* § 1-04(c)(3) ("A multiple-occupancy area shall provide a minimum of one operable toilet and shower for every 8 prisoners and one operable sink for every 10 prisoners.").

The violation of minimum City standards as to occupancy does not, on its own, violate Myers's constitutional due process rights. *See Brown v. Plata*, 131 S. Ct. 1910, 1944–45 (2011); *Bell*, 441 U.S. at 542; *Patterson*, 2012 WL 3264354, at *6. "[C]ourts must not confuse professional standards with constitutional requirements," *Brown*, 131 S. Ct. at 1944,[7] and overcrowding amounts to punishment only when a detainee is subjected "over an extended period to genuine privations and hardship not reasonably related to a legitimate governmental objective." *Lareau v. Manson*, 651 F.2d 96, 103 (2d Cir. 1981).

Because Myers's complaints of overcrowding and an insufficient number of sinks and toilets do not reach the level of a constitutional violation of his due process rights, these claims are dismissed, with prejudice.

        2.    *Holding cell conditions*

Myers alleges that, prior to being placed in the dormitory where he is currently housed, he was in a holding cell for over 16 hours. The only place to sit in the cell was on "a urine and filth laden floor," and the cell was not air-conditioned. Detainees were not given cups to drink water from, but rather had to drink from latex gloves.

---

[7] Absent explicit "substantive limitations on official discretion," state regulations do not create liberty interests enforceable under the Due Process Clause. *Patterson*, 2012 WL 3264354, at *4 (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) (citing *Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000); *Hovatar v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993)). The New York City minimum standards to which Myers cites contain no such substantive limitations on official discretion, and therefore create no liberty interest cognizable under the federal constitution. *See Patterson*, 2012 WL 3264345, at *4. Accordingly, Myers's myriad claims as to defendants' failure to meet various City minimum standards are dismissed, with prejudice.

While it may have been uncomfortable for Myers to be held in a warm room without air-conditioning for 16 hours, it does not rise to the level of a constitutional violation. *See, e.g., Hall v. Perilli*, No. 03-cv-4635, 2004 WL 1068045, at *8 (S.D.N.Y. May 13, 2004) (Report & Recommendation) (collecting cases in which temporary intemperate conditions, unaccompanied by serious medical needs, are insufficient to state a constitutional violation). "[T]he Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), and to recover on a claim of unsanitary prison housing conditions, a plaintiff must allege that he was denied "'the minimal civilized measure of life's necessities.'" *Carr v. Canty*, No. 10-cv-3892, 2012 WL 3578742, at *3 (S.D.N.Y. Aug. 16, 2012) (quoting *Rhodes*, 452 U.S. at 347). A detainee who is regularly forced to sleep on the floor or on a filthy surface, or who is housed for a sustained period of time in filthy conditions, may state a claim for unconstitutionally unsanitary conditions; however, courts have only found such claims in situations that lasted at least for multiple days. *See Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (possible constitutional violation where prison left uncleaned for days a corridor littered with human excrement, despite multiple inmate complaints); *McCord v. Maggio*, 927 F.2d 844, 847 (5th Cir. 1991) (constitutional violation where detainee regularly had to spend nights either standing up or lying on a mattress placed on a floor covered in sewage water); *LaReau v. MacDougall*, 473 F.2d 974, 977–79 (2d Cir. 1972) (five days in small cell with no toilet facilities constitutes a constitutional violation). Here, Myers alleges that his confinement in the holding cell lasted approximately 16 hours, and he makes no claim that the unsanitary conditions continue in the cell in which he is now placed. Discomfort of this short duration does not rise to the level of a constitutional violation. *See Wang v. Vahldieck*, No. 09-cv-3783, 2012 WL 119591, at *9 (E.D.N.Y. Jan. 9, 2012) ("temporary or limited exposure to unsanitary conditions fails to state an injury of

[13]

constitutional magnitude") (citing *Ortiz v. Dep't of Corr.*, No. 08-cv-2195, 2011 WL 2638137, at
*7 (S.D.N.Y. Apr. 29, 2011) (Report & Recommendation) (collecting cases)). Nor does Myers's
claim that, while in the holding cell, he was given a medical glove to drink out of, instead of a
cup. Depriving detainees of "basic human needs," such as "food, clothing, shelter, medical care
and reasonable safety," may violate the constitution. *Helling v. McKinney*, 509 U.S. 25, 32
(1993). Because Myers does not claim that he went without water, but only that it was offered in
a less-than-ideal vessel for the 16 hours he was in the holding cell, there is no possible
constitutional violation.

Because the conditions alleged by Myers while he was in the holding cell for 16 hours do
not rise to the level of a constitutional violation of his due process rights, these claims are
dismissed with prejudice.

### 3.     *Depleted hygienic supplies*

Myers claims that, due to overcrowding, toiletries, including "soap, razors and other
items are quickly depleted or not available." "The failure to regularly provide prisoners with . . .
toilet articles including soap, razors, combs, toothpaste, toilet paper, access to a mirror and
sanitary napkins for female prisoners constitutes a denial of personal hygiene and sanitary living
conditions." *Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 406 (S.D.N.Y. 2005) (internal
quotations marks and citations omitted). However, "[c]ourts are extremely reluctant . . . to find
constitutional violations based on temporary deprivations of personal hygiene and grooming
items." *Benjamin*, 161 F. Supp. 2d at 175–76 (internal quotation marks and citations omitted)
(collecting cases); *see also, e.g.*, *Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir. 2003)
(deprivation of toiletries for two weeks does not rise to the level of a constitutional violation).
The vague allegations in Myers's Complaint are insufficient, as written, to allege a constitutional

[14]

violation. On the face of the Complaint it is not even clear that Myers himself has gone without

toiletries items, let alone for a significant period of time. Accordingly, this claim is dismissed,

without prejudice to re-filing if (1) Myers can demonstrate that he has exhausted his

administrative remedies, and (2) Myers can plead, with sufficient specificity, that he has been

deprived of hygienic items repeatedly, and/or for an extended period of time.

### 4.    *Lack of access to laundry*

Myers alleges that clean clothes are in short supply and that, due to lack of access to

laundry facilities, he has had to sleep on "rust laden sheets for over a month." Prisoners are

entitled, under the constitution, to clothing and linens that are clean, or to the opportunity to

clean such items themselves. *Benjamin*, 161 F. Supp. 2d at 178 (collecting cases); *Patterson*,

2012 WL 3264354, at *8. While Myers does claim that laundry service at OBCC has ceased,

and that clean clothes are in short supply, he does not allege that he has been denied to

opportunity or the means to clean his linens or clothes himself, and thus does not allege a due

process violation. *Patterson*, 2012 WL 3264354, at *8. This claim is dismissed, without

prejudice to re-filing if (1) Myers can demonstrate that he has exhausted his administrative

remedies and (2) Myers can plead, with sufficient specificity, that he has been deprived of any

means by which to obtain clean clothes and/or linens.

### 5.    *Long wait times for visitors*

Myers's Complaint claims that, because OBCC is above-capacity, "[v]isits take longer to

facilitate, [which] frustrates my and other visitors [until] they leave out of frustration" from

having waited so long. "[L]imitations on visits that are reasonably related to a legitimate

penological interest do not violate" a detainee's constitutional rights. *Patterson*, 2012 WL

3264354, at *7 (citing *Block v. Rutherford*, 468 U.S. 576, 585–89 (1984)). Facilities, such as

[15]

OBCC, have a legitimate penological interest in establishing a rigorous registration process in order to safely coordinate and accurately track visits between those inside and those beyond their walls. While it is true that the withdrawal of visitation privileges for extended periods of time, or for arbitrary reasons, may implicate a detainee's due process rights, *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003), the fact that some visitors leave before clearing OBCC's registration process does not convert Myers's claim into a constitutional one. As Myers does not allege that OBCC's process is arbitrary, or that his visitation privileges have been revoked, this claim is dismissed, with prejudice.

### F.    Verbal Abuse

Myers alleges that, while placed in the holding cell, the correction officers used profane language. "[V]erbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and is therefore not actionable." *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998); *see also Vogelfang v. Capra*, No. 10-cv-3827, 2012 WL 832440, at *11 (S.D.N.Y. Mar. 13, 2012) (collecting cases). Accordingly, Myers' verbal abuse claim is dismissed, with prejudice.

### G.    Strip Searches

Myers claims he was strip searched five times—once before being placed in his cell, and four times upon leaving OBCC to appear in court. He argues that such suspicionless strip searches are unconstitutional when performed upon a non-felony detainee, such as himself.

"The Fourth Amendment prohibits only unreasonable searches." *Bell*, 441 U.S. at 558. In determining the reasonableness of a search, courts must "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in

which it is conducted." *Id.* at 559. In the setting of a jail or prison, "correctional officers must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities," and deference must be given to such officers' judgment "unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 132 S. Ct. 1510, 1517 (2012) (citing *Bell*, 441 U.S. at 546); *Id.* at 1518 (quoting *Block v. Rutherford*, 468 U.S. 576, 584–85 (1984)). In *Florence*, the Supreme Court found that a suspicionless strip search of a detainee arrested on a non-serious crime conducted prior to his introduction into the general jail population was reasonable. Myers's argument, therefore, that officers' strip searching him upon his original entry into OBCC, and upon leaving OBCC to appear in court, is unconstitutional because he is a non-felony detainee, fails. The Fourth Amendment does not require correctional officials to exempt some detainees—*e.g.*, those arrested on a non-felony charge—who will be admitted to a jail's general population from strip searches, and, under the standard outlined in *Florence*, the searches to which Myers was subjected were "reasonably related to legitimate security interests," including preventing the smuggling of contraband into or out of OBCC. *Florence*, 132 S. Ct. at 1516–17. Myers's unconstitutional strip search claims are dismissed, with prejudice.

### H.     Law Library Access

Myers alleges that the tier in which he is housed, "5upper," was denied access to the law library on one occasion "as a result of 2 consecutive searches." As an initial matter, it is unclear from Myers's allegation whether Myers himself sought and was denied access to the library, or whether he only heard, through another detainee in his tier, that 5upper was not allowed to use the law library; if it is the latter, Myers lacks standing to bring this claim. However, even assuming, *arguendo*, that Myers himself was denied access to the law library on this one occasion, he still does not have standing to bring a claim of denial of access to courts.

The Constitution guarantees confined individuals meaningful access to courts, which, in the case of *pro se* litigants, includes access to a facility's law library, or to an alternative source of legal information. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Pollack v. Holanchock*, No. 10-cv-2402, 2012 WL 1646893, at *2 (S.D.N.Y. May 10, 2012). "Because law libraries and legal assistance programs do not represent constitutional rights in and of themselves, but only the means to ensure 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts,' prisoners must demonstrate 'actual injury' in order to have standing." *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Here, Myers alleges only that his tier was denied access to the law library on one occasion; he does not assert that it had any cognizable effect on his ability to pursue litigation. Furthermore, access to legal assistance need not be unfettered, and facilities "may place reasonable restrictions on inmates' use of facility law libraries as long as those restrictions do not interfere with inmates' access to the courts." *Melendez v. Haase*, No. 04-cv-73, 2010 WL 5248627, at *7 (S.D.N.Y. Dec. 15, 2010) (internal quotation marks and citation omitted). A one-

[18]

time restriction on access to the law library does not rise to the level of unconstitutional obstruction of access to courts.  This claim is dismissed, with prejudice.

## CONCLUSION

Defendants' motion to dismiss is GRANTED in its entirety.  The following claims are dismissed with prejudice: (1) all § 1983 claims against defendant Maribal; (2) failure to comply with consent decrees; (3) failure to follow minimum standards; (4) overcrowding; (5) insufficient number of sinks and toilets; (6) unconstitutional conditions in the holding cell; (7) long wait times for visitors; (8) verbal abuse; (9) unconstitutional strip search; and (10) access to law library.  The following claims are dismissed without prejudice to re-filing, if Myers can demonstrate exhaustion of the appropriate underlying procedures and plead his allegations with sufficient particularity: (1) excessive bail; (2) depleted hygienic supplies; and (3) lack of access to laundry.  The Clerk of Court is directed to terminate the motion at docket number 12, and to close this case.

SO ORDERED.

Paul A. Engelmayer
Paul A. Engelmayer
United States District Judge

Dated: August 29, 2012
       New York, New York

[19]